# HILLARD *v.* BROOKS.

PATENTS; INTERFERENCE; APPEAL AND ERROR.

1. Where the application of one of the parties to an interference is only a division of an application theretofore filed, he is entitled to the filing date of his first application for the purposes of the interference.

2. Although certain counts of the issue in an interference case, as to which the Commissioner dissolved the interference upon the ground that they were not patentable to either of the parties as they had been patented by other parties, are included in an appeal from the Commissioner's final decision in the case, they cannot be considered by this court, but only the other counts will be considered; nor will this court consider the question as to the patentability of other counts held by the board of examiners-in-chief not to be patentable, but held by the Commissioner to be patentable.

3. Where the only witness of one of the parties to an interference, an employee of the same factory, although testifying that the device of such party was operative on a given date, and performed the functions for which it was intended, had a device of his own which he considered superior to it, and substituted for it his own device on a machine which he was left in charge of during the other's temporary absence, and the device so removed was never again restored to the machine or placed on any other machine, but was consigned to the scrap pile; and where it further appears that such party ·to the interference waited nearly two years after his alleged reduction to practice before filing his application, and in the meantime did nothing towards the practical development of his alleged invention,—such evidence would tend to show that what he did was an unsatisfactory experiment rather than a reduction to practice.

4. Where it appeared that the primary examiner, the examiner of interferences, and the examiners-in-chief in an interference case construed broadly an issue in an interference proceeding, and the Commissioner held that a limited construction must be placed upon the issue in the light of the art, this court refused to consider the question whether the primary examiner erred in allowing the broad claims, although it might have been considered by the Commissioner, and as the interference was not dissolved by the Commissioner, it was *held* that a machine which came within the broad terms of the issue was a reduction to practice of that issue.

5. Where one of the parties to an interference is shown to have been the

D. C.]                    Opinion of the Court.

first to conceive and the first to reduce to practice the invention of some of the counts, and, though first to conceive and last to reduce to practice the invention of the remaining counts, was diligent in reducing that invention to practice, he is entitled to an award of priority of invention as to all of the counts.

No. 225.    Patent Appeals.    Submitted November 10, 1903.    Decided May 4, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Thomas Ewing, Jr.,* and *Mr. Vernon M. Dorsey* for the appellant.

*Mr. J. Edgar Bull* and *Mr. William G. Henderson* for the appellee.

*Mr. Justice MORRIS* delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference case, in which the subject of controversy is an improvement in typewriting machines consisting of a line-lock or contrivance for locking the machine when the end of a line is reached and thereby preventing the printing of characters one over the other; and also to release the lock in order to allow the printing of additional characters to finish or properly divide a word.    Thirteen different statements have been deemed necessary by the parties wherein to formulate the issue.    They are as follows:

"1. In a typewriting machine, the combination of a platen-carriage, a spacing mechanism, a stop brought into position by the movement of the platen-carriage to arrest the spacing mechanism, and mechanism connected with said stop whereby it is positively disengaged from said spacing mechanism to permit further movement of the platen-carriage.

"2. In a typewriting machine, the combination of a stop

brought into position by the movement of the platen-carriage to arrest the spacing mechanism and a lever connected with said stop whereby it is positively disengaged from said spacing mechanism to permit further movement of the platen-carriage.

"3. In a typewriter line-lock, the combination of two stops, means for moving one of the stops into position to obstruct the other stop, and means including an independent key for positively removing one of the stops out of the path of the other stop.

"4. In a typewriter line-lock, the combination of two stops, one of the stops being mounted on a part moving with the carriage, the two stops being so positioned that upon movement of the carriage the carriage-stop is brought into position to obstruct the other stop while both stops are in their normal positions, an independent key and means operated by the key for moving one of the stops out of its normal position to release the line-lock.

"5. In a typewriter line-lock the combination of a power-driven stop and a key-driven stop, movable in transverse paths which intersect each other, whereby when the power-driven stop is brought to the intersecting point it obstructs the key-driven stop while both the stops are in their normal positions.

"6. In a typewriter line-lock the combination of a power-driven carriage and a line-lock, two stops in the line-lock, one of which is mounted upon a part moving with the carriage and the other on a part moving with the printing mechanism, the two stops being so positioned that upon the movement of the carriage the stop moving therewith is brought into obstructive position relatively to the other stop while both the stops are in their normal position.

"7. In a typewriting machine the combination of an escapement, a power-driven carriage, two stops, one mounted on a part moving with the carriage and the other mounted on and vibrating with the escapement, the two stops being so positioned that upon the movement of the carriage the carriage-stop is brought into position in the path of the escapement-stop to obstruct the movement thereof and lock the printing mechanism while both stops are in their normal positions.

"8. In a typewriter line-lock the combination of two movable stops whose paths are transverse of one another and intersect one another, whereby when the two stops are brought to the intersecting point in their paths one of the stops hits the other, and means including an independent key for positively removing one of the stops out of the path of the other stop.

"9. In a typewriting machine the combination of spacing mechanism, a stop, means for moving the stop into position to obstruct the spacing mechanism at a predetermined point, and means including an independent key for positively removing the obstruction from the spacing mechanism.

"10. In a typewriting machine the combination of an escapement, a carriage, a stop, means for advancing the carriage and for thereby moving the stop into position to obstruct the escapement at a predetermined point, and means including an independent key for positively removing the stop out of its obstructive position.

"11. In a typewriting machine the combination of an escapement, a carriage, a movable stop mounted on the carriage and advanced with the carriage into position to obstruct the escapement at a predetermined point, an independent key normally free from the carriage and means controlled thereby for positively removing the stop out of its obstructive position.

"12. In a typewriting machine the combination of spacing mechanism, a carriage, a stop attached to the spacing mechanism and moving therewith, a stop mounted on the part moving with the carriage and advanced therewith into the path of the stop in the spacing mechanism whereby the stop in the spacing mechanism is obstructed by said stop which is advanced with the carriage, a key, and means operated by the key for moving the said stop which is advanced with the carriage out of the way of the spacing-mechanism stop to release the spacing mechanism.

"13. In a typewriter line-lock the combination of two stops, one of which is mounted in the escapement and movable therewith and the other of which is moved with the carriage into po-

sition to obstruct the escapement-stop, a key, a line-lock releaser, and a connection between the key and the line-lock releaser whereby the releaser is controlled by the key."

For the claims enumerated the appellant, Frederic W. Hillard, filed his application for a patent on November 10, 1896; but his application was only a division of an application filed on January 3, 1893, which resulted in a patent for the claims therein retained on April 6, 1897. He is therefore entitled to the filing date of January 3, 1893.

The appellee, Byron A. Brooks, filed his application now in interference on March 8, 1900. But this is also a divisional application, the original application having been filed on April 26, 1894, which resulted in the issue of a patent to him on June 25, 1901. He is therefore entitled to the filing date of April 26, 1894. Brooks consequently is the junior applicant, the two dates being respectively January 3, 1893, and April 26, 1894.

Hillard in his preliminary statements alleges conception of the invention by him in September of 1890, a disclosure and reduction to practice of it in August of 1891, and a subsequent reduction to practice in October or November of 1891. Brooks in his preliminary statement alleges conception of the invention by him in September of 1891, a disclosure of it in the same month, and a reduction to practice during the latter part of the year 1891.

The examiner of interferences awarded judgment of priority to Hillard as to all the counts except those numbered 11 and 13; and as to these last two he awarded judgment of priority to Brooks. The board of examiners-in-chief in part affirmed and in part reversed the decision of the examiner, and awarded judgment of priority to Hillard as to all the counts. In their opinion, however, they called the attention to the fact that as to some of the counts neither party was entitled to a patent in view of the previous state of the art. The Commissioners held that counts 5, 6, and 7 were not patentable to either of the parties as they had been anticipated by other patents; and as to

them he dissolved the interference. They have, therefore, dropped out of the case. As to all the remaining counts he reversed the decision of the board of examiners-in-chief, and awarded judgment of priority to Brooks.

From his decision the present appeal has been taken.

Of course, the counts 5, 6, and 7 of the issue cannot enter into our consideration, although they have been included by the appellant in his appeal. As to them the interference has been dissolved by the Commissioner; and it is not within our province to review his order in that regard. We have nothing to do with that order; and these counts are not before us. The board of examiners-in-chief expressed the opinion that some of the other counts also, which they did not however specify, were amenable to the objection of having been anticipated by a patent issued to other parties; but the Commissioner did not agree with them. That question likewise it is not for us to consider here. The case as made before us does not require its consideration by us.

Each of the tribunals of the Patent Office has rendered a lengthy and elaborate opinion in this case; and we greatly doubt whether any good purpose would be subserved by the addition thereto of another similar discussion—although all the tribunals of the office are radically at variance with each other, and we must form our own conclusion independently of them. It must suffice, however, that we announce that conclusion briefly without any great elaboration of detail, and with the reasons therefor which appear to us to support it.

As it has already been stated, counts numbered 5, 6, and 7 have been eliminated from the case. Of the remaining counts of the issue those numbered 11 and 13 differ considerably from the others in the fact that count 11 requires that the stop-operating key shall be "normally free from the carriage," and that count 13 requires a "line-lock releaser," which is something more than a stop. These two counts, therefor, will be considered separately; and what we have now to say will apply only to the counts numbered 1, 2, 3, 4, 8, 9, 10, and 12 of the issue.

With reference to these last-mentioned eight counts, the testimony on behalf of the appellee Brooks, in our opinion, establishes with sufficient certainty the fact that he had a conception of the invention therein stated and disclosed it some time about the end of April, 1892; but whether he then reduced it to practice we are in very grave doubt. The examiner of interferences and the Commissioner of Patents hold that there was in that same month a reduction to practice by him; the board of examiners-in-chief, while not positively deciding the matter, are disposed to hold adversely to him in this regard. His principal witness—in fact, his only witness—testifies that the device which he then saw—

"was operative and performed the functions for which it was intended, and actually did arrest the carriage and prevent the type-bar from printing."

But it is a significant fact that when this witness, who was an employee in the factory in which Brooks also was occupied at the time, and who had a device of his own which he considered superior to that of Brooks, was left, during the temporary absence of Brooks during part of the summer of 1892, in charge of the machine upon which Brooks had placed his device, the witness substituted his own device instead of that of Brooks, and the Brooks device was never again restored to that machine, or placed upon any other machine for practical use, and no machine with the Brooks device has ever been manufactured for actual use or sale. The witness in fact testified that he consigned the device to the scrap-pile.. And it is another significant fact that the appellee, Brooks, waited for very nearly two years after his alleged reduction to practice before he applied to the Patent Office, and in the meantime seems to have done nothing, so far as the record shows, toward the practical development of his alleged invention. All this, whether it be regarded as neglect or as concealment, would tend to show that what he did in April of 1892 was rather an unsatisfactory experiment than a successful reduction to practice. But in the view which we take of the case it is unnecessary to decide that question here.

The testimony on behalf of Hillard shows, with certainty at least equal to that in the case of Brooks, that during the months of November and December of 1891 he had the conception and made disclosure of the invention in question, and that in and during those months he constructed a full-sized machine embodying, or claimed by him to embody, the invention. In fact, it seems to be conceded on behalf of Brooks that this machine was constructed at the time claimed for it by Hillard. And, of course, it follows that, if this machine embodied the invention of the issue, Hillard must be held to have anticipated Brooks in every respect, and to be entitled to judgment of priority of invention.

Both the examiner of interferences and the board of examiners-in-chief have held that Hillard's machine of December, 1891, does embody the invention. The Commissioner of Patents holds to the contrary; and rules that it could only be so held upon a broad construction of the claims of the issue, which would not be permissible with reference to the state of the previous art, and which would necessitate a dissolution of the interference on the ground that the claims of the issue would not then be patentable to either party, in consequence of their anticipation by a previous patent. Much stress seems to be laid on the fact that, in the original application of which the present is only a division, Hillard himself seems to repudiate any such broad construction. But we do not so understand his statement in that application; and even if such were its meaning, we do not understand that now and in the present application he would necessarily be precluded from setting up the broader construction. Without going into any examination of this question in detail, it must suffice for us that the primary examiner, as well as the examiner of interferences and the board of examiners-in-chief, have all proceeded upon the broad construction that justifies the claim of Hillard. All through the proceedings before the primary examiner the patent was kept in mind and constantly referred to, which is supposed, upon this broad construc-

tion, to have anticipated the claims of Hillard; and the interference was declared only when it was supposed that all objections on this account had been removed. Whether the primary examiner erred or not, it is not for us to say here. The Commissioner may consider the question; but we cannot. We are satisfied from the testimony that the Hillard machine of December, 1891, shows the invention here in controversy, and therefore anticipates Brooks by about four months.

With reference to counts 11 and 13 of the issue, the record is not free from difficulty. We find, however, in the testimony of Hillard's patent attorney and in that of the draftsman employed by him to prepare blue-prints and specifications of his invention, sufficient to show that he had a conception of the invention of these counts also in December of 1891. He certainly had it in August of 1892; for a blue-print or drawing of that date made by the draftsman and proved by him shows it quite distinctly. His machine of December, 1891, heretofore mentioned, does not however show it; and we cannot regard it as having been reduced to practice by him before the filing of his application on January 3, 1893. The testimony however shows that he was active in the meantime in his preparation for application to the Patent Office, and not wanting in diligence. He may well, therefore, connect his prior conception with his reduction to practice, even if it should be held that what Brooks did in April of 1892 was a reduction to practice. We think that we should concur with the board of examiners-in-chief in determining the issue as to these counts also in favor of Hillard.

On the whole we are of opinion that the appellant, Frederic W. Hillard, is entitled to a judgment of priority of invention; and therefore that the decision appealed from should be reversed.

The clerk of the court will certify this opinion and the proceedings of the court in the premises to the Commissioner of Patents according to law.	*Reversed.*